Benjeman Beck (SBN 268617)
bbeck@slpattorney.com
Anna Knafo (SBN 245182)
aknafo@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone:  (310) 929-4900
Facsimile:   (310) 943-3838

Attorneys for Plaintiffs KARI EISENACHER and
DAVID EISENACHER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARI EISENACHER and DAVID EISENACHER,<br><br>          Plaintiffs,<br><br>     v.<br><br>BMW OF NORTH AMERICA, LLC; PAG SANTA ANA B1, Inc.; and DOES 1 through 10, inclusive;<br><br>          Defendants. | Case No.: 2:17-cv-00984-ODW-JCx<br><br>**DECLARATION OF ANNA LISA KNAFO IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>Date:          December 4, 2017<br>Judge:        Hon. Otis D. Wright II<br>Time:          1:30 p.m.<br>Location:    Courtroom 5D |

## DECLARATION OF ANNA KNAFO

I, Anna Knafo, declare:

1.     I am an attorney admitted to the Bar of the State of California and the United States District Court, Central District of California.  I am counsel of record for Plaintiffs Kari Eisenacher and David Eisenacher in the above-entitled action.  Unless the context indicates otherwise, I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently to them.

2.     I submit this declaration in support of Plaintiffs' Motion for Leave to File First Amended Complaint

3.     Since the filing of Plaintiffs' Complaint, Plaintiffs have been diligently prosecuting this action.  For example, immediately after the commencement of the action, on January 17, 2017, Plaintiffs served discovery, including special interrogatories, form interrogatories, requests for production of documents, requests for admission, and a notice of PMQ deposition. Defendant responded to the written discovery on February 21, 2017.

4.     Attached as **Exhibit 1** is a true and correct copy of Plaintiffs' operative complaint.

5.     Attached as **Exhibit 2** is a true and correct copy of Plaintiffs' proposed First Amended Complaint.

6.     Attached as **Exhibit 3** is a true and correct copy of a redline comparison of Plaintiffs' operative complaint and proposed First Amended Complaint.

7.     Attached as **Exhibit 4** is a true and correct copy of Plaintiffs' February 8, 2017 CLRA letter to Defendant.

8.     Plaintiffs' February 8, 2017 CLRA letter prompted a settlement discussion of Plaintiffs' CLRA claim. Defendant responded to Plaintiffs' statutory notice on or about March 10, 2017 proposing settlement of the CLRA

1  claim and settlement discussions ensued. Attached as **Exhibit 5** is a true and

2  correct copy of Defendant's March 10, 2017 response.

3       9.     During the course of the settlement discussions, on or about August

4  4, 2017, Defendant requested financial information from Plaintiffs, purportedly

5  necessary for Plaintiffs' claim for restitution. The requested information was

6  provided to Defendant on or about August 16, 2017.  However, after that

7  information was provided, on August 21, 2017, Defendant reversed course and

8  advised Plaintiffs' counsel Defendant was "not interested in resolving Plaintiffs'

9  purported claims piecemeal" and that no settlement could be reached on the

10  CLRA claim alone. When Plaintiffs subsequently attempted to "meet and

11  confer" regarding Plaintiffs' request to amend the Complaint to add the CLRA

12  claim, consistent with their obligations under Local Rule 7-3, Defense counsel

13  advised Plaintiffs' counsel that there was nothing to meet and confer about and

14  that Defendant would not stipulate to allow Plaintiffs to amend the complaint to

15  add the CLRA claim. Attached as **Exhibit 6** is a true and correct copy of July 24,

16  2012 - October 12, 2017 e-mail chain.

17       10.    On October 18, 2017, consistent with their obligations under Local

18  Rule 7-3, Plaintiffs met and conferred with Defendants by phone, requesting that

19  Defendant stipulate to an amended complaint adding a claim for fraudulent

20  omission.  Defendant, however, refused to so stipulate, on the grounds that

21  Plaintiffs' proposed amendment was not timely.

22       I declare under the penalty of perjury under the laws of the United States

23  of America that the foregoing is true and correct.  Executed on November 6,

24  2017 at Los Angeles, California.

25

26  _____

27  Anna Knafo

28

2

**KNAFO DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

# EXHIBIT 1

Benjeman Beck (State Bar No. 268617)
bbeck@slpattorney.com
Jared V. Walder (State Bar No. 310687)
jwalder@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Attorneys for Plaintiffs KARI EISENACHER and DAVID EISENACHER

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| KARI EISENACHER and DAVID EISENACHER, <br><br> Plaintiff, <br><br> vs. <br><br> BMW OF NORTH AMERICA, LLC; PAG SANTA ANA B1, Inc.; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: <br><br> Hon. <br> Dept.: <br><br> **COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS** <br><br> JURY TRIAL DEMANDED |

Page 1

**COMPLAINT; JURY TRIAL DEMANDED**

Plaintiff alleges as follows:

**PARTIES**

1.      As used in this Complaint, the word "Plaintiff" shall refer to Plaintiffs KARI EISENACHER and DAVID EISENACHER.

2.      Plaintiff is a resident of Brea, California.

3.      As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint.

4.      Defendant BMW OF NORTH AMERICA is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California.  At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County.

5.      Defendant PAG SANTA ANA B1, Inc., conducts business in the State of California under the name "Crevier BMW." At all times relevant herein, Defendant was engaged in the business of selling automobile components and servicing and repairing automobiles in Los Angeles County.

6.      Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474.  When Plaintiff becomes aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

**FIRST CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2**

7.      In 2012, Plaintiff purchased a 2012 BMW 550i, vehicle identification number WBAFR9C5DCDV58985, (hereafter "Vehicle") which was manufactured and or distributed

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

1  by Defendant.  The Vehicle was purchased primarily for personal, family, or household

2  purposes.  Plaintiff purchased the Vehicle from a person or entity engaged in the business of

3  manufacturing, distributing, or selling consumer goods at retail.

4         8.     In connection with the purchase, Plaintiff received an express written warranty

5  in which Defendant undertook to preserve or maintain the utility or performance of the

6  Vehicle or to provide compensation if there is a failure in utility or performance for a

7  specified period of time.  The warranty provided, in relevant part, that in the event a defect

8  developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for

9  repair services to Defendant's representative and the Vehicle would be repaired.

10         9.     During the warranty period, the Vehicle contained or developed defects,

11  including but not limited to defects causing: excessive oil consumption; oil leakage; shimmy

12  and noises in the steering wheel; smoke and oil coming from the exhaust; fuel injector failure;

13  faulty timing chain; faulty fuel feed lines; faulty vacuum pumps and crankcase vent hoses; and

14  faulty battery. Said defects substantially impair the use, value, or safety of the Vehicle.

15        10.    Defendant and its representatives in this state have been unable to service or

16  repair the Vehicle to conform to the applicable express warranties after a reasonable number

17  of opportunities.  Despite this fact, Defendant failed to promptly replace the Vehicle or make

18  restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil

19  Code section 1793.1, subdivision (a)(2).

20        11.    Plaintiff has been damaged by Defendant's failure to comply with its

21  obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section

22  1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code

23  section 1794.

24        12.    Defendant's failure to comply with its obligations under Civil Code section

25  1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that

26  they were unable to service or repair the Vehicle to conform to the applicable express

27  warranties after a reasonable number of repair attempts, yet Defendant failed and refused to

28

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

COMPLAINT; JURY TRIAL DEMANDED

1  promptly replace the Vehicle or make restitution.  Accordingly, Plaintiff is entitled to a civil

2  penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794,

3  subdivision (c).

4       13.     Defendant does not maintain a qualified third-party dispute resolution process

5  which substantially complies with Civil Code section 1793.22.  Accordingly, Plaintiff is

6  entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code

7  section 1794, subdivision (e).

8       14.     Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e)

9  in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code

10  section 1794, subdivision (f).

11                      **SECOND CAUSE OF ACTION**

12                 **BY PLAINTIFF AGAINST DEFENDANT**

13     **VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2**

14       14.     Plaintiff incorporates by reference the allegations contained in the paragraphs

15  set forth above.

16       15.     Although Plaintiff presented the Vehicle to Defendant's representative in this

17  state, Defendant and its representative failed to commence the service or repairs within a

18  reasonable time and failed to service or repair the Vehicle so as to conform to the applicable

19  warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b).  Plaintiff

20  did not extend the time for completion of repairs beyond the 30-day requirement.

21       16.     Plaintiff has been damaged by Defendant's failure to comply with its

22  obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of

23  Action pursuant to Civil Code section 1794.

24       17.     Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the

25  Vehicle, and has exercised a right to cancel the sale.  By serving this Complaint, Plaintiff does

26  so again.  Accordingly, Plaintiff seeks the remedies provided in California Civil Code section

27  1794(b)(1), including the entire lease price.  In the alternative, Plaintiff seeks the remedies set

28

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects.  Plaintiff believes that, at the present time, the Vehicle's value is *de minimis*.

18.     Defendant's failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant and its representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so.  Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

**THIRD CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2**

19.     Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

20.     In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period.  Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

21.     Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendant knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages; pursuant to Civil Code section 1794(c).

//

//

//

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**FOURTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**BREACH OF EXPRESS WRITTEN WARRANTY**

**CIV. CODE, § 1791.2, SUBD. (a); § 1794)**

22.     Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

23.     In accordance with Defendant's warranty, Plaintiff delivered the Vehicle to Defendant's representative in this state to perform warranty repairs.  Plaintiff did so within a reasonable time.  Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the Defects.  However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

24.     Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

25.     Defendant's failure to comply with its obligations under the express warranty was willful, in that Defendant and its authorized representative were aware that they were obligated to repair the Defects, but they intentionally refused to do so.  Accordingly, Plaintiff is entitled to a civil penalty of two times of Plaintiff's actual damages pursuant to Civil Code section 1794(c).

**FIFTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(CIV. CODE, § 1791.1; § 1794)**

26.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

27.     Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendant's implied warranty of merchantability.  Pursuant to Civil Code section 1791.1,

COMPLAINT; JURY TRIAL DEMANDED

the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant, except that the duration is not to exceed one-year.

28.     Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements:  (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

29.     Within one year of purchase, the Vehicle contained or developed the defects set forth above.  The existence of each of these defects constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

30.     Plaintiff has been damaged by Defendant's failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

**PRAYER**

PLAINTIFF PRAYS for judgment against Defendant as follows:

    a.  For Plaintiff's actual damages according to proof at the time of trial;

    b.  For restitution;

    c.  For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

    d.  For any consequential and incidental damages;

    e.  For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

COMPLAINT; JURY TRIAL DEMANDED

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

1    f.   For prejudgment interest at the legal rate; and

2    g.   For such other relief as the Court may deem proper.

3

4                    **DEMAND FOR JURY TRIAL**

5    Plaintiff hereby demands a jury trial on all causes of action asserted herein.

6

7    Dated: December 8, 2016                     STRATEGIC LEGAL PRACTICES, APC

8

9                                        By: Jared Walder

10                                       Attorney for Plaintiffs KARI EISENACHER
                                         and DAVID EISENACHER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT; JURY TRIAL DEMANDED**

# EXHIBIT 2

1   Benjeman Beck (State Bar No. 268617)
    bbeck@slpattorney.com
2   Jared V. Walder (State Bar No. 310687)
    jwalder@slpattorney.com
3   STRATEGIC LEGAL PRACTICES, APC
    1840 Century Park East, Suite 430
4   Los Angeles, CA 90067
    Telephone: (310) 929-4900
5   Facsimile:  (310) 943-3838

6
    Attorneys for Plaintiffs KARI EISENACHER
7   and DAVID EISENACHER

8

9
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
                        FOR THE COUNTY OF LOS ANGELES
11

12

13   KARI EISENACHER and DAVID            Case No.: 2:17-cv-00984-ODW-JCx
     EISENACHER,
14                                         Hon. Otis D. Wright II
                                           Dept.: Courtroom 5D
15           Plaintiff,

16      vs.                                **[PROPOSED] FIRST AMENDED
                                           COMPLAINT FOR VIOLATION
17                                         OF STATUTORY OBLIGATIONS**
     BMW OF NORTH AMERICA, LLC;
18   PAG SANTA ANA B1, Inc.; and DOES      JURY TRIAL DEMANDED
     1 through 10, inclusive,
19

20           Defendants.

21

22

23

24

25

26

27

28
                                    Page 1

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430 LOS ANGELES, CA 90067

Plaintiff alleges as follows:

**PARTIES**

1.      As used in this Complaint, the word "Plaintiff" shall refer to Plaintiffs KARI EISENACHER and DAVID EISENACHER.

2.      Plaintiff is a resident of Brea, California.

3.      As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint.

4.      Defendant BMW OF NORTH AMERICA is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California.  At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County.

5.      Defendant PAG SANTA ANA B1, Inc., conducts business in the State of California under the name "Crevier BMW." At all times relevant herein, Defendant was engaged in the business of selling automobile components and servicing and repairing automobiles in Los Angeles County.

6.      Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474.  When Plaintiff becomes aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

///

///

///

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

**FIRST CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION**

**1793.2**

7.      In 2012, Plaintiff purchased a 2012 BMW 550i, vehicle identification number WBAFR9C5DCDV58985, (hereafter "Vehicle") which was manufactured and or distributed by Defendant.  The Vehicle was purchased primarily for personal, family, or household purposes.  Plaintiff purchased the Vehicle from a person or entity engaged in the business of manufacturing, distributing, or selling consumer goods at retail.

8.      In connection with the purchase, Plaintiff received an express written warranty in which Defendant undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time.  The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired.

9.      During the warranty period, the Vehicle contained or developed defects, including but not limited to defects causing: excessive oil consumption; oil leakage; shimmy and noises in the steering wheel; smoke and oil coming from the exhaust; fuel injector failure; faulty timing chain; faulty fuel feed lines; faulty vacuum pumps and crankcase vent hoses; and faulty battery. Said defects substantially impair the use, value, or safety of the Vehicle.

10.     Defendant and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities.  Despite this fact, Defendant failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

Strategic Legal Practices, APC
1840 Century Park East, Suite 430, Los Angeles, CA 90067

Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

11.     Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

12.     Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle or make restitution.  Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

13.     Defendant does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

14.     Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

**SECOND CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2**

14.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

15.     Although Plaintiff presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b).  Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

16.     Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

17.     Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the Vehicle, and has exercised a right to cancel the sale.  By serving this Complaint, Plaintiff does so again.  Accordingly, Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire lease price.  In the alternative, Plaintiff seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects.  Plaintiff believes that, at the present time, the Vehicle's value is *de minimis*.

18.     Defendant's failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant and its representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so.  Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

///

///

///

///

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**THIRD CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2**

19.    Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

20.    In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period.  Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

21.    Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendant knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages; pursuant to Civil Code section 1794(c).

**FOURTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**BREACH OF EXPRESS WRITTEN WARRANTY**

**CIV. CODE, § 1791.2, SUBD. (a); § 1794)**

22.    Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

23.    In accordance with Defendant's warranty, Plaintiff delivered the Vehicle to Defendant's representative in this state to perform warranty repairs.

Plaintiff did so within a reasonable time.  Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the Defects.  However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

24.    Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

25.    Defendant's failure to comply with its obligations under the express warranty was willful, in that Defendant and its authorized representative were aware that they were obligated to repair the Defects, but they intentionally refused to do so.  Accordingly, Plaintiff is entitled to a civil penalty of two times of Plaintiff's actual damages pursuant to Civil Code section 1794(c).

## FIFTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
## (CIV. CODE, § 1791.1; § 1794)

26.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

27.    Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendant's implied warranty of merchantability.  Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant, except that the duration is not to exceed one-year.

28.    Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements:  (1) The Vehicle will pass without objection in the

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

29.    Within one year of purchase, the Vehicle contained or developed the defects set forth above.  The existence of each of these defects constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

30.    Plaintiff has been damaged by Defendant's failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794..

**SIXTH CAUSE OF ACTION**

**BY PLAINTIFFS AGAINST DEFENDANT**

**VIOLATION OF CONSUMER LEGAL REMEDIES ACT**

**(CIV. CODE §§ 1750 *et seq.*)**

31.    Plaintiffs incorporate by reference the allegations contained in the paragraphs set forth above.

32.    Defendant BMW OF NORTH AMERICA is a "person" as defined by California Civil Code § 1761(c).

33.    Plaintiffs are a "consumer" within the meaning of California Civil Code § 1761(d).

34.    On or about November 11, 2012, Plaintiffs purchased the Vehicle as manufactured with Defendant's engine and components.

35.    Defendant violated the California Consumer Legal Remedies Act

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

("CLRA") when, inter alia, it engaged in unfair and deceptive acts, and by knowingly warranting and allowing to be sold to Plaintiffs the Vehicle without disclosing that the Vehicle and its engine was defective.

36.     Specifically, Defendant knew that 2012 BMW 550i vehicles equipped with the N63 engine had one or more defects that can result in various problems, including, but not limited to, improperly burning off and/or consuming abnormally high amounts of engine oil. ("Oil Consumption Defect"). The Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure. As a consequence, the Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes

37.     These conditions present a safety hazard and are unreasonably dangerous to consumers. This is because the Oil Consumption Defect prevents the engine from maintaining the proper level of engine oil and causes voluminous oil consumption that cannot be reasonably anticipated or predicted, thereby potentially causing engine failure while the vehicle is operation at any time and under any driving conditions or speeds and thus contributing to car accidents.

38.     In addition to these safety hazards, the Oil Consumption Defect can result in additional monetary costs to consumers such as Plaintiffs, who can incur costs for unreasonably frequent oil changes and/or oil additions, in addition to repair costs due to resulting breakdown of engine parts.

39.     Plaintiffs are informed, believe, and thereon allege that while Defendant knew about the Oil Consumption Defect, and its safety risks since at least 2010, and prior to Plaintiffs acquiring the Vehicle, Defendant nevertheless concealed and failed to disclose the defective nature of the Vehicle and its N63 engine to Plaintiffs at the time of sale and thereafter.  Had Plaintiffs known that the subject Vehicle suffered from the Oil Consumption Defect, they would not have

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430 LOS ANGELES, CA 90067

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

1   purchased the Vehicle.

2       40.     By failing to disclose and concealing the defective nature of the Oil

3   Defect from Plaintiffs, Defendant violated California Civil Code § 1770(a), as it i)

4   represented that the Vehicle and its engine had characteristics and benefits that they

5   do not have, and ii) represented that the Vehicle and its N63 engine were of a

6   particular standard, quality, or grade when they were of another.  See Cal. Civ. Code

7   §§ 1770(a)(5) and (7).

8       41.     Unfair and deceptive acts or practices occurred repeatedly in

9   Defendant's trade or business, were capable of deceiving not only Plaintiffs but a

10  substantial portion of the purchasing public, and imposed a serious safety risk on

11  the public, including Plaintiffs.

12      42.     Defendant knew that the Vehicle and its N63 engine suffered from an

13  inherent defect, were defective, would fail prematurely, and were not suitable for

14  their intended use.

15      43.     Defendant was under a duty to Plaintiffs to disclose the defective

16  nature of the Vehicle and its N63 engine, its safety consequences and/or the

17  associated repair costs, for the following reasons:

18          a.    Upon information and belief, Defendant acquired its

19              knowledge of the Oil Consumption Defect and its potential

20              consequences prior to Plaintiffs acquiring the Vehicle,

21              through sources not available to consumers such as Plaintiffs,

22              including but not limited to pre-production testing data, post-

23              production testing, early consumer complaints about the Oil

24              Consumption Defect made directly to Defendant and its

25              network of dealers, aggregate warranty data compiled from

26              Defendant's network of dealers, testing conducted by

27              Defendant in response to these complaints, as well as

28

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

warranty repair and part replacements data received by Defendant from Defendant's network of dealers, amongst other sources of internal information;

b.  Defendant was in a superior position to know the true state of facts about the safety defects contained in the Vehicle and its engine;

c.  Plaintiffs could not reasonably have been expected to learn about or discover the Vehicle's Oil Consumption Defect and its potential consequences until after Plaintiffs purchased the Vehicle and Defendant failed to repair it after a number of repair attempts;

d.  Defendant knew (or should have known) that Plaintiffs could not reasonably have been expected to learn about or discover the Oil Consumption Defect and its potential safety consequences prior to purchasing the subject Vehicle;

e.  Defendant knew (or should have known) that Plaintiffs could not reasonably have been expected to learn about the Oil Consumption defect until after the engine failed and Defendant's inability to repair it after a number of repair attempts.

44.  In failing to disclose the defects in the Vehicle's N63 engine, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

45.  The facts concealed or not disclosed by Defendant to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle.  Had Plaintiffs known that

[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

the Vehicle and its engine were defective at the time of sale, he would not have purchased the Vehicle.

46.     Plaintiffs are reasonable consumers who do not expect their Vehicle's engine to fail and not work properly.  Plaintiffs further expect and assume that Defendant will not sell or lease vehicles with known material defects, including but not limited to those involving the Vehicle's engine, and will disclose any such defect to its consumers before selling such vehicles.

47.     As a result of Defendant's misconduct, Plaintiffs have been harmed and have suffered actual damages.

48.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs have suffered and will continue to suffer actual damages.

49.     Plaintiffs are entitled to equitable and injunctive relief under the CLRA.

50.     Plaintiffs have provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  More than 30 days have since elapsed and Defendant has failed to provide appropriate relief for its violations of the CLRA.  Accordingly, Plaintiffs seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief.

## SEVENTH CAUSE OF ACTION
## BY PLAINTIFFS AGAINST DEFENDANT
## FRAUD BY OMISSION

51.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

52.     Plaintiffs purchased the Vehicle as manufactured with Defendant BMW's V-8, twin-turbocharged engine, which BMW and enthusiasts refer to as the "N63."

53.     Defendant BMW committed fraud by allowing the Vehicle to be sold to Plaintiffs without disclosing that the Vehicle and its N63 engine was defective and susceptible to sudden and premature failure.

54.     In particular, Plaintiffs are informed, believe, and thereon allege that prior to Plaintiffs acquiring the Vehicle, BMW was well aware and knew that the N63 engine installed on the Vehicle was defective but failed to disclose this fact to Plaintiffs at the time of lease and sale and thereafter.[1]

55.     Specifically, BMW knew (or should have known) that the twin-turbo charged engine had one or more defects that cause the subject vehicle to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "Oil Consumption Defect").  The Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure.  As a consequence, the Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes.[2]

56.     The Oil Consumption Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted.  Therefore, the Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the subject vehicle is in operation at any time and under any driving

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

---

[1] Indeed, Defendant has issued various internal technical bulletins to its dealers (not consumers) concerning the Engine Defect.

[2] The Oil Consumption Defect was particularly apparent in a recent Consumer Reports study on excessive oil consumption.  Consumer Reports studied 498,900 vehicles across several makes and models for complaints about engine oil consumption and concluded BMW's twin turbocharged engine was included on four out of the five most defective vehicles.

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

conditions or speeds, thereby exposing the subject vehicle's driver, passengers, and others who share the road with them, to serious risk of accidents and injury.

57.     Plaintiffs are informed, believe and thereon allege that Defendant BMW acquired its knowledge of the Oil Consumption Defect prior to Plaintiffs acquiring the Vehicle, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the engine defect made directly to BMW and its network of dealers, aggregate warranty data compiled from BMW's network of dealers, testing conducted by BMW in response to these complaints, as well as warranty repair and parts replacement data received by BMW from BMW's network of dealers, amongst other sources of internal information.

58.     Plaintiffs are informed, believe, and thereon allege that while Defendant BMW knew about the Oil Consumption Defect, and its safety risks since mid-2008, if not before, BMW nevertheless concealed and failed to disclose the defective nature of the Vehicle and its N63 engine to Plaintiffs at the time of lease and/or sale and thereafter.  Had Plaintiffs known that the Vehicle suffered from the Oil Consumption Defect, they would not have leased and/or purchased the Vehicle.

59.     Indeed, Plaintiffs allege that prior to the lease and/or sale of the Vehicle to Plaintiff, Defendant BMW knew that the Vehicle and its N63 engine suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

60.     Defendant BMW was under a duty to Plaintiffs to disclose the defective nature of the Vehicle and its N63 engine, its safety consequences and/or the associated repair costs because:

a. Defendant BMW acquired its knowledge of the Oil Consumption Defect and its potential consequences prior to Plaintiffs acquiring the

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the Oil Consumption Defect made directly to BMW and its network of dealers, aggregate warranty data compiled from BMW's network of dealers, testing conducted by BMW in response to these complaints, as well as warranty repair and part replacements data received by BMW from its network of dealers, amongst other sources of internal information;

b. Defendant BMW was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with N63 engine; and

c. Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Oil Consumption Defect and its potential consequences until well after Plaintiffs leased and/or purchased the Vehicle.

61. In failing to disclose the defects in the Vehicle's N63 engine, Defendant BMW has knowingly and intentionally concealed material facts and breached its duty not to do so.

62. The facts concealed or not disclosed by Defendant BMW to Plaintiffs is material in that a reasonable person would have considered them to be important in deciding whether or not to lease and/or purchase the Vehicle.  Had Plaintiffs known that the Vehicle and its N63 engine were defective at the time of lease and/or sale, they would not have leased and/or purchased the Vehicle.

63. Plaintiffs are reasonable consumers who do not expect their engine to fail and not work properly.  Plaintiffs further expect and assume that Defendant BMW will not sell or lease vehicles with known material defects, including but

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

not limited to those involving the vehicle's N63 engine and will disclose any such defect to its consumers before selling such vehicles.

64.  As a result of Defendant BMW's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

## PRAYER

PLAINTIFF PRAYS for judgment against Defendant as follows:

      a.  For Plaintiffs' actual damages according to proof at the time of trial;

      b.  For restitution;

      c.  For a civil penalty in the amount of two times Plaintiffs' actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

      d.  For any consequential and incidental damages;

      e.  For punitive damages;

      f.  For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

      g.  For prejudgment interest at the legal rate; and

      h.  For such other relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

Dated:  November 6, 2017             Respectfully submitted,

                                   Strategic Legal Practices, APC

                       By:  */s/ Anna L. Knafo*
                          Anna Lisa Knafo
                          Attorneys for Plaintiffs Kari Eisenacher
                          and David Eisenacher

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

EXHIBIT 3

Benjeman Beck (State Bar No. 268617)
bbeck@slpattorney.com
Jared V. Walder (State Bar No. 310687)
jwalder@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile:  (310) 943-3838

Attorneys for Plaintiffs KARI EISENACHER
and DAVID EISENACHER

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| KARI EISENACHER and DAVID EISENACHER, <br><br> Plaintiff, <br><br> vs. <br><br> BMW OF NORTH AMERICA, LLC; PAG SANTA ANA B1, Inc.; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 2:17-cv-00984-ODW-JCx <br><br> Hon. Otis D. Wright II <br> Dept.: Courtroom 5D <br><br> **[PROPOSED] FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS** <br><br> JURY TRIAL DEMANDED |

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

Plaintiff alleges as follows:

**PARTIES**

1.     As used in this Complaint, the word "Plaintiff" shall refer to Plaintiffs KARI EISENACHER and DAVID EISENACHER.

2.     Plaintiff is a resident of Brea, California.

3.     As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint.

4.     Defendant BMW OF NORTH AMERICA is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California.  At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County.

5.     Defendant PAG SANTA ANA B1, Inc., conducts business in the State of California under the name "Crevier BMW." At all times relevant herein, Defendant was engaged in the business of selling automobile components and servicing and repairing automobiles in Los Angeles County.

6.     Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474.  When Plaintiff becomes aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

///

///

///

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

**FIRST CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT**

**VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION**

**1793.2**

7.      In 2012, Plaintiff purchased a 2012 BMW 550i, vehicle identification number WBAFR9C5DCDV58985, (hereafter "Vehicle") which was manufactured and or distributed by Defendant.  The Vehicle was purchased primarily for personal, family, or household purposes.  Plaintiff purchased the Vehicle from a person or entity engaged in the business of manufacturing, distributing, or selling consumer goods at retail.

8.      In connection with the purchase, Plaintiff received an express written warranty in which Defendant undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time.  The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired.

9.      During the warranty period, the Vehicle contained or developed defects, including but not limited to defects causing: excessive oil consumption; oil leakage; shimmy and noises in the steering wheel; smoke and oil coming from the exhaust; fuel injector failure; faulty timing chain; faulty fuel feed lines; faulty vacuum pumps and crankcase vent hoses; and faulty battery. Said defects substantially impair the use, value, or safety of the Vehicle.

10.     Defendant and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities.  Despite this fact, Defendant failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

11.     Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

12.     Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle or make restitution.  Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

13.     Defendant does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

14.     Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

## SECOND CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT
## VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2

14.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

15.     Although Plaintiff presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b).  Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

16.     Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

17.     Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the Vehicle, and has exercised a right to cancel the sale.  By serving this Complaint, Plaintiff does so again.  Accordingly, Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire lease price.  In the alternative, Plaintiff seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects.  Plaintiff believes that, at the present time, the Vehicle's value is *de minimis*.

18.     Defendant's failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant and its representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

///

///

///

///

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

## THIRD CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT
## VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2

19.     Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

20.     In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period.  Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

21.     Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendant knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages; pursuant to Civil Code section 1794(c).

## FOURTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT
## BREACH OF EXPRESS WRITTEN WARRANTY
## CIV. CODE, § 1791.2, SUBD. (a); § 1794)

22.     Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

23.     In accordance with Defendant's warranty, Plaintiff delivered the Vehicle to Defendant's representative in this state to perform warranty repairs.

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Plaintiff did so within a reasonable time.  Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the Defects.  However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

24.   Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

25.   Defendant's failure to comply with its obligations under the express warranty was willful, in that Defendant and its authorized representative were aware that they were obligated to repair the Defects, but they intentionally refused to do so.  Accordingly, Plaintiff is entitled to a civil penalty of two times of Plaintiff's actual damages pursuant to Civil Code section 1794(c).

## FIFTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
## (CIV. CODE, § 1791.1; § 1794)

26.   Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

27.   Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendant's implied warranty of merchantability.  Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant, except that the duration is not to exceed one-year.

28.   Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements:  (1) The Vehicle will pass without objection in the

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

1  trade under the contract description; (2) The Vehicle is fit for the ordinary

2  purposes for which such goods are used; (3) The Vehicle is adequately

3  contained, packaged, and labelled; (4) The Vehicle will conform to the promises

4  or affirmations of fact made on the container or label.

5       29.    Within one year of purchase, the Vehicle contained or developed the

6  defects set forth above.  The existence of each of these defects constitutes a

7  breach of the implied warranty because the Vehicle (1) does not pass without

8  objection in the trade under the contract description, (2) is not fit for the ordinary

9  purposes for which such goods are used, (3) is not adequately contained,

10  packaged, and labelled, and (4) does not conform to the promises or affirmations

11  of fact made on the container or label.

12       30.    Plaintiff has been damaged by Defendant's failure to comply with its

13  obligations under the implied warranty, and therefore brings this Cause of Action

14  pursuant to Civil Code section 1794..

### SIXTH CAUSE OF ACTION
### BY PLAINTIFFS AGAINST DEFENDANT
### VIOLATION OF CONSUMER LEGAL REMEDIES ACT
### (CIV. CODE §§ 1750 *et seq.*)

19       31.    Plaintiffs incorporate by reference the allegations contained in the

20  paragraphs set forth above.

21       32.    Defendant BMW OF NORTH AMERICA is a "person" as defined by

22  California Civil Code § 1761(c).

23       33.    Plaintiffs are a "consumer" within the meaning of California Civil

24  Code § 1761(d).

25       34.    On or about November 11, 2012, Plaintiffs purchased the Vehicle as

26  manufactured with Defendant's engine and components.

27       35.    Defendant violated the California Consumer Legal Remedies Act

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

("CLRA") when, inter alia, it engaged in unfair and deceptive acts, and by knowingly warranting and allowing to be sold to Plaintiffs the Vehicle without disclosing that the Vehicle and its engine was defective.

36.     Specifically, Defendant knew that 2012 BMW 550i vehicles equipped with the N63 engine had one or more defects that can result in various problems, including, but not limited to, improperly burning off and/or consuming abnormally high amounts of engine oil. ("Oil Consumption Defect"). The Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure. As a consequence, the Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes

37.     These conditions present a safety hazard and are unreasonably dangerous to consumers. This is because the Oil Consumption Defect prevents the engine from maintaining the proper level of engine oil and causes voluminous oil consumption that cannot be reasonably anticipated or predicted, thereby potentially causing engine failure while the vehicle is operation at any time and under any driving conditions or speeds and thus contributing to car accidents.

38.     In addition to these safety hazards, the Oil Consumption Defect can result in additional monetary costs to consumers such as Plaintiffs, who can incur costs for unreasonably frequent oil changes and/or oil additions, in addition to repair costs due to resulting breakdown of engine parts.

39.     Plaintiffs are informed, believe, and thereon allege that while Defendant knew about the Oil Consumption Defect, and its safety risks since at least 2010, and prior to Plaintiffs acquiring the Vehicle, Defendant nevertheless concealed and failed to disclose the defective nature of the Vehicle and its N63 engine to Plaintiffs at the time of sale and thereafter. Had Plaintiffs known that the subject Vehicle suffered from the Oil Consumption Defect, they would not have

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

1    purchased the Vehicle.

2        40.    By failing to disclose and concealing the defective nature of the Oil

3    Defect from Plaintiffs, Defendant violated California Civil Code § 1770(a), as it i)

4    represented that the Vehicle and its engine had characteristics and benefits that they

5    do not have, and ii) represented that the Vehicle and its N63 engine were of a

6    particular standard, quality, or grade when they were of another.  See Cal. Civ. Code

7    §§ 1770(a)(5) and (7).

8        41.    Unfair and deceptive acts or practices occurred repeatedly in

9    Defendant's trade or business, were capable of deceiving not only Plaintiffs but a

10    substantial portion of the purchasing public, and imposed a serious safety risk on

11    the public, including Plaintiffs.

12        42.    Defendant knew that the Vehicle and its N63 engine suffered from an

13    inherent defect, were defective, would fail prematurely, and were not suitable for

14    their intended use.

15        43.    Defendant was under a duty to Plaintiffs to disclose the defective

16    nature of the Vehicle and its N63 engine, its safety consequences and/or the

17    associated repair costs, for the following reasons:

18            a.    Upon information and belief, Defendant acquired its

19                knowledge of the Oil Consumption Defect and its potential

20                consequences prior to Plaintiffs acquiring the Vehicle,

21                through sources not available to consumers such as Plaintiffs,

22                including but not limited to pre-production testing data, post-

23                production testing, early consumer complaints about the Oil

24                Consumption Defect made directly to Defendant and its

25                network of dealers, aggregate warranty data compiled from

26                Defendant's network of dealers, testing conducted by

27                Defendant in response to these complaints, as well as

28

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC

1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

1   warranty repair and part replacements data received by

2   Defendant from Defendant's network of dealers, amongst

3   other sources of internal information;

4   b.   Defendant was in a superior position to know the true state of

5   facts about the safety defects contained in the Vehicle and its

6   engine;

7   c.   Plaintiffs could not reasonably have been expected to learn

8   about or discover the Vehicle's Oil Consumption Defect and

9   its potential consequences until after Plaintiffs purchased the

10   Vehicle and Defendant failed to repair it after a number of

11   repair attempts;

12   d.   Defendant knew (or should have known) that Plaintiffs could

13   not reasonably have been expected to learn about or discover

14   the Oil Consumption Defect and its potential safety

15   consequences prior to purchasing the subject Vehicle;

16   e.   Defendant knew (or should have known) that Plaintiffs could

17   not reasonably have been expected to learn about the Oil

18   Consumption defect until after the engine failed and

19   Defendant's inability to repair it after a number of repair

20   attempts.

21   44.   In failing to disclose the defects in the Vehicle's N63 engine,

22   Defendant has knowingly and intentionally concealed material facts and

23   breached its duty not to do so.

24   45.   The facts concealed or not disclosed by Defendant to Plaintiffs are

25   material in that a reasonable person would have considered them to be important

26   in deciding whether or not to purchase the Vehicle. Had Plaintiffs known that

27

28

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

the Vehicle and its engine were defective at the time of sale, he would not have purchased the Vehicle.

46.    Plaintiffs are reasonable consumers who do not expect their Vehicle's engine to fail and not work properly.  Plaintiffs further expect and assume that Defendant will not sell or lease vehicles with known material defects, including but not limited to those involving the Vehicle's engine, and will disclose any such defect to its consumers before selling such vehicles.

47.    As a result of Defendant's misconduct, Plaintiffs have been harmed and have suffered actual damages.

48.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs have suffered and will continue to suffer actual damages.

49.    Plaintiffs are entitled to equitable and injunctive relief under the CLRA.

50.    Plaintiffs have provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  More than 30 days have since elapsed and Defendant has failed to provide appropriate relief for its violations of the CLRA. Accordingly, Plaintiffs seek monetary, compensatory, and punitive damages, in addition to the injunctive and equitable relief.

## SEVENTH CAUSE OF ACTION
## BY PLAINTIFFS AGAINST DEFENDANT
## FRAUD BY OMISSION

51.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

52.     Plaintiffs purchased the Vehicle as manufactured with Defendant BMW's V-8, twin-turbocharged engine, which BMW and enthusiasts refer to as the "N63."

53.     Defendant BMW committed fraud by allowing the Vehicle to be sold to Plaintiffs without disclosing that the Vehicle and its N63 engine was defective and susceptible to sudden and premature failure.

54.     In particular, Plaintiffs are informed, believe, and thereon allege that prior to Plaintiffs acquiring the Vehicle, BMW was well aware and knew that the N63 engine installed on the Vehicle was defective but failed to disclose this fact to Plaintiffs at the time of lease and sale and thereafter.[1]

55.     Specifically, BMW knew (or should have known) that the twin-turbo charged engine had one or more defects that cause the subject vehicle to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "Oil Consumption Defect").  The Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure.  As a consequence, the Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes.[2]

56.     The Oil Consumption Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted.  Therefore, the Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the subject vehicle is in operation at any time and under any driving

_____

[1] Indeed, Defendant has issued various internal technical bulletins to its dealers (not consumers) concerning the Engine Defect.
[2] The Oil Consumption Defect was particularly apparent in a recent Consumer Reports study on excessive oil consumption.  Consumer Reports studied 498,900 vehicles across several makes and models for complaints about engine oil consumption and concluded BMW's twin turbocharged engine was included on four out of the five most defective vehicles.

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

conditions or speeds, thereby exposing the subject vehicle's driver, passengers, and others who share the road with them, to serious risk of accidents and injury.

57.    Plaintiffs are informed, believe and thereon allege that Defendant BMW acquired its knowledge of the Oil Consumption Defect prior to Plaintiffs acquiring the Vehicle, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the engine defect made directly to BMW and its network of dealers, aggregate warranty data compiled from BMW's network of dealers, testing conducted by BMW in response to these complaints, as well as warranty repair and parts replacement data received by BMW from BMW's network of dealers, amongst other sources of internal information.

58.    Plaintiffs are informed, believe, and thereon allege that while Defendant BMW knew about the Oil Consumption Defect, and its safety risks since mid-2008, if not before, BMW nevertheless concealed and failed to disclose the defective nature of the Vehicle and its N63 engine to Plaintiffs at the time of lease and/or sale and thereafter.  Had Plaintiffs known that the Vehicle suffered from the Oil Consumption Defect, they would not have leased and/or purchased the Vehicle.

59.    Indeed, Plaintiffs allege that prior to the lease and/or sale of the Vehicle to Plaintiff, Defendant BMW knew that the Vehicle and its N63 engine suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

60.    Defendant BMW was under a duty to Plaintiffs to disclose the defective nature of the Vehicle and its N63 engine, its safety consequences and/or the associated repair costs because:

a. Defendant BMW acquired its knowledge of the Oil Consumption Defect and its potential consequences prior to Plaintiffs acquiring the

[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the Oil Consumption Defect made directly to BMW and its network of dealers, aggregate warranty data compiled from BMW's network of dealers, testing conducted by BMW in response to these complaints, as well as warranty repair and part replacements data received by BMW from its network of dealers, amongst other sources of internal information;

b. Defendant BMW was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with N63 engine; and

c. Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Oil Consumption Defect and its potential consequences until well after Plaintiffs leased and/or purchased the Vehicle.

61.    In failing to disclose the defects in the Vehicle's N63 engine, Defendant BMW has knowingly and intentionally concealed material facts and breached its duty not to do so.

62.    The facts concealed or not disclosed by Defendant BMW to Plaintiffs is material in that a reasonable person would have considered them to be important in deciding whether or not to lease and/or purchase the Vehicle.  Had Plaintiffs known that the Vehicle and its N63 engine were defective at the time of lease and/or sale, they would not have leased and/or purchased the Vehicle.

63.    Plaintiffs are reasonable consumers who do not expect their engine to fail and not work properly.  Plaintiffs further expect and assume that Defendant BMW will not sell or lease vehicles with known material defects, including but

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

not limited to those involving the vehicle's N63 engine and will disclose any such defect to its consumers before selling such vehicles.

64.    As a result of Defendant BMW's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

### PRAYER

PLAINTIFF PRAYS for judgment against Defendant as follows:

      a.  For Plaintiffs' actual damages according to proof at the time of trial;

      b.  For restitution;

      c.  For a civil penalty in the amount of two times Plaintiffs' actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

      d.  For any consequential and incidental damages;

      e.  For punitive damages;

      f.  For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

      g.  For prejudgment interest at the legal rate; and

      h.  For such other relief as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

Dated:  November 6, 2017                Respectfully submitted,

Strategic Legal Practices, APC

By:  */s/ Anna L. Knafo*
    Anna Lisa Knafo
    Attorneys for Plaintiffs Kari Eisenacher
    and David Eisenacher

[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**[PROPOSED] FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED**

# EXHIBIT 4



### STRATEGIC LEGAL PRACTICES
#### A PROFESSIONAL CORPORATION

1840 Century Park East, Suite 430 · Los Angeles, CA 90067
Telephone: 310-929-4900 · Fax: 310-943-3838·www.slpattorney.com

Jared Walder
E-Mail: jwalder@slpattorney.com

February 8, 2017

<u>**VIA CERTIFIED MAIL (RETURN RECEIPT REQUESTED) and FIRST CLASS MAIL**</u>

BMW of North America, LLC
c/o CT Corporation System
818 West 7th Street, 2nd Floor
Los Angeles, California 90017

BMW of North America, LLC
300 Chestnut Ridge Road
Woodcliff Lake, NJ 07677

Brian Takahashi
Richard L. Stuhlbarg
Bowman and Brooke, LLP
970 West 190th Street, Suite 700
Torrance, California 90502

Re:   Kari Eisenacher and David Eisenacher
        2012 BMW 550I; VIN: WBAFR9C50CDV58985
        **Notice of Violaion of California Consumer Legal Remedies Act, Civil Code Section
        1750, *et seq.***

Dear Sirs,

We are writing this letter on behalf of our clients Kari Eisenacher and David Eisenacher
("Plaintiff" or "client"), consumers residing in the state of California who purchased a 2012 BMW 550I;
VIN: WBAFR9C50CDV58985  ("subject vehicle") manufactured and distributed by BMW of North
America, LLC ("BMW" or "Defendant"), and for which BMW issued a written warranty.

Pursuant to the California Consumer Legal Remedies Act ("CLRA"), California Civil Code
section 1750 et seq., and specifically, sections 1782(a)(1) and (2), we hereby notify you that BMW and/s
or its subsidiaries and affiliates have violated section 1770 of the CLRA by knowingly warranting and
selling the subject vehicle to our client without disclosing that the subject vehicle and its engine is
defective.

In particular, we are informed, believe and thereon allege that prior to our client acquiring the
subject vehicle, BMW was well aware and knew that the twin-turbocharged engine ("N63 engine")

installed on the subject vehicle was defective but failed to disclose this fact to our client at the time of sale and repair.

Specifically, BMW knew (or should have known) that the subject vehicle and its N63 engine had one or more design and/or manufacturing defects that causes the subject vehicle to be unable to properly utilize the engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of oil (the "Oil Consumption Defect"). Engine oil serves an essential function. It lubricates the moving parts of the engine and dissipates heat throughout the engine. Therefore, the Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure. As a consequence, the Oil Consumption Defect requires unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes. The Oil Consumption Defect is a safety concern because it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted. Therefore, the Oil Consumption Defect is unreasonably dangerous because it can cause engine failure while the subject vehicle is in operation at any time and under any driving conditions or speeds, thereby exposing the subject vehicle's driver, passengers, and others who share the road with them, to serious risk of accidents and injury.

We are informed, believe, and thereon allege that BMW acquired its knowledge of the Oil Consumption Defect prior to our client acquiring the subject vehicle, through sources not available to consumers such as our client, including but not limited to pre-production and post-production testing data, early consumer complaints about the engine defect made directly to BMW and its network of dealers, aggregate warranty data compiled from BMW's network of dealers, testing conducted by BMW in response to these complaints, as well as warranty repair and parts replacement data received by BMW from BMW's network of dealers, amongst other sources of internal information.

However, despite its awareness of the Oil Consumption Defect since 2011 if not before, BMW failed to disclose this material fact to our client at the time of sale or thereafter. Had our client known about the Oil Consumption Defect at the time of sale, our client would not have purchased the subject vehicle. Moreover, despite its awareness of the Oil Consumption Defect, BMW has also continued to actively conceal the true nature of the defect at the time of repair.

BMW's conduct in warranting, advertising, selling, and representing the subject vehicle as alleged herein constitute the following violations of section 1770:

1. Representing that goods have characteristics, use and benefits which they do not have (§ 1770(a)(5)); and
2. Representing that goods are of a particular standard, quality, or grade, if they are of another (§ 1770(a)(7)).

Pursuant to section 1782 of the CLRA and based on the foregoing, we hereby demand that within thirty (30) days of receiving this letter, BMW:

1. Offer to take the vehicle back and reimburse all amounts paid on the subject vehicle's contract price without offset, and plus pre-judgment interest at the legal rate;
2. Offer to reimburse our client all incident and consequential damages; and
3. Pay for all of our client's attorneys' fees and costs to date.

Jared Walder
Strategic Legal Practices, APC
1840 Century Park East, Suite 430

Los Angeles, California 90067
Telephone: 310-929-4900
Facsimile: 310-943-3838

     If you intend to cure these violations, please notify the above counsel within 30-days of receipt of this notice.

Sincerely,

Jared Walder
Strategic Legal Practices, APC

# EXHIBIT 5



**Bowman and Brooke** LLP

*Attorneys at Law*

970 West 190th Street, Suite 700
Torrance, CA 90502
Phone: 310.768.3068
Fax: 310.719.1019

Lindsay G. Carlson
Direct: 1.310.380.6571
Email: lindsay.carlson@bowmanandbrooke.com

March 10, 2017

*Via Email and U.S. Mail*

Rodney Gi
Strategic Legal Practices, APC
1840 Century Park East, Suite 430
Los Angeles, CA 90067

Re:   <u>Kari Eisenacher, et al. v. BMW of North America, LLC</u>
      U.S. District Court, Central District of California Case No. 2:17−cv−984 ODW (JCx)
      VIN WBAFR9C50CDV58985

Dear Rodney:

As you know, we represent BMW of North America, LLC ("BMW NA") in this matter. We received your letter dated February 8, 2017, titled "Notice of Violation of California Consumer Legal Remedies Act, Civil Code Section 1750, et seq." on February 13, 2017. Given that BMW NA is a represented party, your correspondence should have been directed only to us – and not to our client. We remind you of your obligations under the California Rules of Professional Conduct, particularly Rule 2-100, which states that a member of the California State Bar "shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer." You neither sought nor obtained our consent before contacting BMW NA, thus you have violated this rule. Immediately cease contacting BMW NA, and direct your further communications to my office.

BMW NA has asked us to assist and investigate Plaintiffs' claim, and respond to your letter. In short, you claim that BMW NA violated the CLRA by "knowingly warranting and selling" the 2012 BMW 750i VIN WBAFR9C50CDV58985 ("Subject Vehicle") that is the subject of this action to Plaintiffs, "without disclosing that the subject vehicle and its engine is defective." Specifically, you contend that BMW NA was aware that the twin-turbocharged N63 engine in the Subject Vehicle was defective, and BMW NA failed to disclose that fact to the Plaintiffs "at the time of sale and repair." You contend that the purported defect that serves as the basis of Plaintiffs' complaint relates to the N63 engine and your allegations that it causes the Subject Vehicle "to be unable to properly utilize the engine oil, and in fact, to improperly burn off and/or consume abnormally high amounts of oil," resulting in the need for "unreasonably frequent oil changes and/or the addition of oil between scheduled oil changes."

Your letter accuses BMW NA of "representing" to Plaintiffs that the Subject Vehicle had characteristics, use and benefits which it did not have, and "representing" that the Subject Vehicle was of a particular standard, quality, or grade, if it is of another. You provide no facts demonstrating that any representations were made to the Plaintiffs, nor do you state who made such alleged representations, or when. It is important to note that BMW NA is the distributor of new BMW vehicles in the United States, but it does not sell vehicles directly to retail customers.

Rodney Gi
Re: Eisenacher v. BMW of North America, LLC
March 10, 2017
Page 2


Rather, customers purchase or lease new BMW vehicles from authorized centers, which are independently owned and operated. BMW NA's records show that Plaintiffs purchased the Subject Vehicle from BMW of Monrovia. As BMW NA was not involved in this transaction, contrary to your accusations, BMW made no representations to Plaintiffs.[1]

Notwithstanding the above, BMW NA hereby offers to repurchase the Subject Vehicle. Even though BMW has evaluated the Subject Vehicle's repair history and formed the good faith belief that the Subject Vehicle does not qualify for repurchase, BMW offers to repurchase the Subject Vehicle using Civil Code Section 1793.2(d)(2) to calculate the restitution amount. This offer is made without any admission of liability. It is made to resolve this dispute amicably, avoid unnecessary fees and costs, and maintain customer satisfaction. So your clients are aware, these are the amounts BMW is willing to pay to accomplish repurchase:

> In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited

---

[1]      The CLRA only covers specified "acts or practices undertaken by any person in a *transaction* intended to result or which results in the *sale of goods* or services to any consumer...." (Civ. Code, § 1770. (emphasis added). Ergo, only those engaged in transactions with consumers can be sued under Civil Code Section 1780(a) ("Any consumer who suffers *any damage* as a result of the use or employment by any person of a method , act or practice declared to be unlawful by Section 1770 may bring an action *against that person...*") (emphasis added).

This interpretation not only flows inexorably from the statutory language, but accords perfectly with the legislative history and purpose of the CLRA. As the California Supreme Court has recognized, the CLRA arose out of concerns about the deceptive practices of inner city merchants in the wake of widespread urban riots in the late 1960s. (See *Broughton v. CIGNA* 21 Cal.4th at 1077 ("The CLRA was enacted in an attempt to alleviate social and economic problems stemming from deceptive business practices, which were identified in the 1969 Report of National Advisory Commission on Civil Disorders (i.e., the Kerner Commission)," citing Reed, Legislating for the Consumer: An Insider's Analysis of the Consumers Legal Remedies Act, 2 Pacific L.J. 1, 5-7 (1971) ("The Kerner Commission found that much of the violence in recent urban disorders was directed at *stores and other commercial establishments in disadvantaged neighborhoods*. Rioters seemed to focus on *stores operated by merchants* who, they believed, had been charging exorbitant prices or selling inferior goods") (emphasis added).) The Reed article also quotes the same effect the Judiciary Committee testimony of Assemblyman James A. Hayes as follows: "The Report of the National Advisory Commission on Civil Disorders found unethical and deceptive practices *of merchants* in low income areas to be factors contributing to the disturbances in our cities in recent years. This bill gives citizens in those areas the right to seek redress in the courts as individuals ...." (*Id.* n. 21 (emphasis added).) Thus, the California Legislature deliberately focused the CLRA on merchants, and the statutory limitation of the CLRA's prohibitions to the practices of retail sellers that engage "in a transaction" with a consumer is therefore completely consistent with the legislative purpose.

Here, the "transaction" limitation expressly precludes your clients from asserting any CLRA claims against BMW NA. They did not purchase their vehicle from BMW NA.

Rodney Gi
Re: Eisenacher v. BMW of North America, LLC
March 10, 2017
Page 3

to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

This repurchase offer also includes compensation for Plaintiff's attorney's fees, in a fixed amount or as determined by a review of your records or a fee motion submitted to the Court. In addition to § 1793.2(d)(2), this repurchase offer is also made pursuant to Civil Code §§1782 and 1784.   By offering repurchase, BMW NA submits there was no intentional violation and an appropriate correction offer was made within 30 days of the CLRA notice.  Please let us know as soon as possible if Plaintiffs will accept BMW NA's repurchase offer.

Your request that BMW NA cease "the sale and leasing" of 2012 BMW 750i vehicles, however, is of no consequence.   BMW NA not only does not sell or lease vehicles to consumers, it has long since ceased distributing 2012 model year vehicles, including the 2012 750i, to independent authorized centers for sale to consumers.  In other words, there is no need for BMW NA to cease engaging in conduct in which it is not currently engaged, and has not been engaged for a long time.

Please pass on this correspondence to your client.  Feel free to contact me if you want to discuss this further.

Sincerely,

Lindsay G. Carlson

Lindsay G. Carlson

LGC/moh

K. Eisenach

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BMW of North America, LLC
c/o CT Corporation System
818 West 7th Street, 2nd Floor
Los Angeles, California 90017

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
□ Agent
□ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:   □ No

3. Service Type
□ Certified Mail   □ Express Mail
□ Registered   □ Return Receipt for Merchandise
□ Insured Mail   □ C.O.D.

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
(Transfer from service label)   7016 0910 0001 0528 0756

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
□ Return Receipt (hardcopy)   $
□ Return Receipt (electronic)   $
□ Certified Mail Restricted Delivery   $
□ Adult Signature Required   $
□ Adult Signature Restricted Delivery   $

Postmark
Here

Postage
$

Total Postage
$

Sent To   BMW of North America, LLC
c/o CT Corporation System
Street and Ap   818 West 7th Street, 2nd Floor
City, State, Zip   Los Angeles, California 90017

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7016 0910 0001 0528 0756

---



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

LOS ANGELES, CA 90017   OFFICIAL USE

Certified Mail Fee   $3.35
Extra Services & Fees (check box, add fee as appropriate)   $2.75
□ Return Receipt (hardcopy)   $0.00
□ Return Receipt (electronic)   $0.00
□ Certified Mail Restricted Delivery   $0.00
□ Adult Signature Required   $0.00
□ Adult Signature Restricted Delivery $

Postage   $0.49

Total Postage   $6.59

Sent To   BMW of North America, LLC
c/o CT Corporation System
Street and Ap   818 West 7th Street, 2nd Floor
City, State, Zip   Los Angeles, California 90017

7016 0910 0001 0528 0756

# EXHIBIT 6

**Anna Knafo**

| | |
|---|---|
| **From:** | Lindsay Carlson <Lindsay.Carlson@bowmanandbrooke.com> |
| **Sent:** | Thursday, October 12, 2017 5:02 PM |
| **To:** | Anna Knafo; Benjeman Beck |
| **Cc:** | Autumn Lewis; Brian Takahashi; Richard Stuhlbarg |
| **Subject:** | RE: Eisenacher v. BMW |

Happy to talk to you on Wednesday about your proposed fraud claim.  I have a meeting from noon-1pm, but otherwise available.

**Lindsay G. Carlson**
Bowman and Brooke LLP
Direct: 1.310.380.6571

**From:** Anna Knafo [mailto:aknafo@slpattorney.com]
**Sent:** Wednesday, October 11, 2017 3:56 PM
**To:** Lindsay Carlson <Lindsay.Carlson@bowmanandbrooke.com>; Benjeman Beck <bbeck@slpattorney.com>
**Cc:** Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi <Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Lindsay:

Neither your letter nor the statute sets forth a deadline for Plaintiffs to respond to your "offer".  Regardless, your March 10, 2017 letter was vague and ambiguous (e.g. there were no numbers provided and it offered to repurchase the vehicle under California Civil Code section 1793.2 as opposed to the CLRA). Plaintiff attempted to meet and confer with you in good faith despite Defendant continuously changing positions during the meet and confer process.

In any event, unless you offer to pay our client full restitution in the amount of $67,542.10 as set forth below, and without any preconditions (e.g. dismissal of our Song-Beverly Claim and request for civil penalty) by close of business on Monday October 16, 2017, we will file our motion for leave to amend to add the CLRA cause of action and advise the Court of BMW's bait and switch tactics which we will attempt to introduce to the Jury at the time of trial.

In addition to the CLRA claim, Plaintiffs intend to add a cause of action for Fraud which like the CLRA claim, will be based on BMW's material omissions.  If we cannot reach an agreement regarding a stipulation to amend the complaint, then this too will be the subject of our Motion to Amend. Please let me know when you are available to meet and confer about amending the complaint to include Plaintiffs' fraud claim. I am available most of next week.

Thank you,

Anna Lisa Knafo
**Strategic Legal Practices**
**A Professional Corporation**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel:  (310) 929-4900
Fax: (310) 943-3838
aknafo@slpattorney.com

1

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original and any copies of this message and any attachments attached to it.

**From:** Lindsay Carlson [mailto:Lindsay.Carlson@bowmanandbrooke.com]
**Sent:** Wednesday, October 11, 2017 2:58 PM
**To:** Benjeman Beck <bbeck@slpattorney.com>
**Cc:** Anna Knafo <aknafo@slpattorney.com>; Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi <Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Benjeman,

I'm not sure what there is to meet and confer about here, I set forth our position quite clearly.  We aren't going to stipulate to allow Plaintiffs to add a tardy CLRA claim.  We made the offer in March, and Plaintiffs didn't even respond to it until July.  That was too late.  You're welcome to file a motion, which we will oppose.

Lindsay

**Lindsay G. Carlson**
Bowman and Brooke LLP
Direct: 1.310.380.6571

**From:** Benjeman Beck [mailto:bbeck@slpattorney.com]
**Sent:** Wednesday, October 11, 2017 2:28 PM
**To:** Lindsay Carlson <Lindsay.Carlson@bowmanandbrooke.com>
**Cc:** Anna Knafo <aknafo@slpattorney.com>; Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi <Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** FW: Eisenacher v. BMW

Lindsay,

I did not receive a response on the below email.  We are available to meet and confer Friday afternoon after 3:00 pm or next week on Monday or Tuesday.  Please advise when you are available.  Should we not receive your response ***before end of business day tomorrow*** then we will proceed with our motion and inform the Judge that you have failed to meet confer.

Benjeman R. Beck
**Strategic Legal Practices**
**A Professional Corporation**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel:  (310) 929-4900
Fax: (310) 943-3838
bbeck@slpattorney.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original and any copies of this message and any attachments attached to it.

**From:** Benjeman Beck
**Sent:** Monday, August 21, 2017 3:28 PM
**To:** 'Lindsay Carlson' <Lindsay.Carlson@bowmanandbrooke.com>; Victoria Shin <vshin@slpattorney.com>
**Cc:** Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi
<Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Lindsay,

Your purported "meet and confer" was in bad faith, it appears you never intended to resolve the CLRA claims or to continue litigating the Song-Beverly claims, including the civil penalty.  Accordingly, please let me know when you are available to meet and confer by phone regarding a stipulation for leave to amend the complaint to add a CLRA cause of action.  In lieu of a stipulation we will be filing a motion regarding the same.

Benjeman R. Beck
**Strategic Legal Practices**
**A Professional Corporation**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel:  (310) 929-4900
Fax: (310) 943-3838
bbeck@slpattorney.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original and any copies of this message and any attachments attached to it.

**From:** Lindsay Carlson [mailto:Lindsay.Carlson@bowmanandbrooke.com]
**Sent:** Monday, August 21, 2017 8:50 AM
**To:** Benjeman Beck <bbeck@slpattorney.com>; Victoria Shin <vshin@slpattorney.com>
**Cc:** Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi
<Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Benjeman,

I spoke to my client, and we believe that your purported acceptance of our offer several months after it was made was not timely.  We're not interested in resolving plaintiffs' purported claims piecemeal, but if you have an offer to make to resolve the case in its entirety, I'd be happy to take it to my client.

Thanks,
Lindsay

**Lindsay G. Carlson**
Bowman and Brooke LLP
Direct: 1.310.380.6571

**From:** Benjeman Beck [mailto:bbeck@slpattorney.com]
**Sent:** Wednesday, August 16, 2017 11:05 AM
**To:** Lindsay Carlson <Lindsay.Carlson@bowmanandbrooke.com>; Victoria Shin <vshin@slpattorney.com>
**Cc:** Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi
<Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Lindsay,

| | |
|---|---|
| Total Down Payment: | $27,800.00 |
| Total of All Payments: | $39,742.10 |
| **Total CLRA Restitution:** | **$67,542.10** |

Please advise if this is BMW's CLRA restitution offer so I can communicate it to my client.

Benjeman R. Beck
**Strategic Legal Practices**
**A Professional Corporation**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel:  (310) 929-4900
Fax: (310) 943-3838
bbeck@slpattorney.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original and any copies of this message and any attachments attached to it.

**From:** Lindsay Carlson [mailto:Lindsay.Carlson@bowmanandbrooke.com]
**Sent:** Tuesday, August 08, 2017 4:03 PM
**To:** Victoria Shin <vshin@slpattorney.com>; Benjeman Beck <bbeck@slpattorney.com>
**Cc:** Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi
<Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Victoria,

Please provide the amount that Plaintiff intends to claim as restitution under the CLRA, as I requested below.  Thanks.

Lindsay

**Lindsay G. Carlson**
Bowman and Brooke LLP
Direct: 1.310.380.6571

**From:** Victoria Shin [mailto:vshin@slpattorney.com]
**Sent:** Tuesday, August 08, 2017 3:21 PM
**To:** Lindsay Carlson <Lindsay.Carlson@bowmanandbrooke.com>; Benjeman Beck <bbeck@slpattorney.com>
**Cc:** Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi

<Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Lindsay,

Please find attached my client's financials.  Thank you.

Victoria Shin
**Strategic Legal Practices**
**A Professional Corporation**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel:  (310) 929-4900
Fax: (310) 943-3838
vshin@slpattorney.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original and any copies of this message and any attachments attached to it.

**From:** Lindsay Carlson [mailto:Lindsay.Carlson@bowmanandbrooke.com]
**Sent:** Friday, August 04, 2017 9:42 AM
**To:** Benjeman Beck <bbeck@slpattorney.com>
**Cc:** Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi <Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>; Victoria Shin <vshin@slpattorney.com>
**Subject:** RE: Eisenacher v. BMW

Benjeman,

You appear not to have read this part of my email: "we still need information from you and your client that will provide the basis for restitution since such information is not available to BMW NA and uniquely within Plaintiffs' control."

I don't know how much Plaintiff is claiming in restitution, and it's inappropriate for me to guess when Plaintiff can easily provide it to us.  Please forward a payment history as well as any other documents that establish Plaintiff's claim to restitution.  Better yet, provide that backup documentation with a figure that you believe is correct, and we will verify and come to an agreement.

Thanks,
Lindsay

**Lindsay G. Carlson**
Bowman and Brooke LLP
Direct: 1.310.380.6571

**From:** Benjeman Beck [mailto:bbeck@slpattorney.com]
**Sent:** Thursday, August 03, 2017 7:42 PM
**To:** Lindsay Carlson <Lindsay.Carlson@bowmanandbrooke.com>
**Cc:** Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi <Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>; Victoria

Shin <vshin@slpattorney.com>
**Subject:** RE: Eisenacher v. BMW

Lindsay,

It is my understanding that we will continue to litigate the other claims in our Complaint including, but not limited to, the civil penalties.  Please advise what the specific restitution amount is that BMW is offering under the CLRA so that we can convey that offer to our clients.

Benjeman R. Beck
**Strategic Legal Practices**
**A Professional Corporation**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel:  (310) 929-4900
Fax: (310) 943-3838
bbeck@slpattorney.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original and any copies of this message and any attachments attached to it.

**From:** Lindsay Carlson [mailto:Lindsay.Carlson@bowmanandbrooke.com]
**Sent:** Tuesday, August 01, 2017 11:03 AM
**To:** Benjeman Beck <bbeck@slpattorney.com>
**Cc:** Jared Walder <jwalder@slpattorney.com>; Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi <Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlbarg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Benjeman,

We have been over this ground with your colleagues at length.  Please see the attached exchange between me and Yoon Kim.  The CLRA offer is made without offset, pursuant to the CLRA statute, and without any admission of liability or waiver of any defenses.  We decline to offer any legal advice and make no representations regarding what impact accepting restitution under the CLRA may have on Plaintiffs' existing Song-Beverly claims.

Your email is ambiguous with respect to Plaintiffs' intentions to accept or reject BMW NA's offer.  If your intention is to accept the offer, we still need information from you and your client that will provide the basis for restitution since such information is not available to BMW NA and uniquely within Plaintiffs' control.  Please provide it as soon as possible.

Lindsay

**Lindsay G. Carlson**
Bowman and Brooke LLP
Direct: 1.310.380.6571

**From:** Benjeman Beck [mailto:bbeck@slpattorney.com]
**Sent:** Monday, July 31, 2017 12:45 PM

**To:** Lindsay Carlson <Lindsay.Carlson@bowmanandbrooke.com>
**Cc:** Jared Walder <jwalder@slpattorney.com>; Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi <Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlberg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Lindsay,

The March 10, 2017 letter is vague and ambiguous for several reasons.  It appears to offer Song-Beverly remedies to satisfy Plaintiff's CLRA claim: "BMW offers to repurchase the Subject Vehicle using Civil Code Section 1793.2(d)(2) to calculate the restitution amount."  As you know, the remedies in Song-Beverly "are cumulative and shall not be construed as restricting any remedy that is otherwise available. . . ." *See e.g.*, Civil Code Section 1790.4.  Similarly, the remedies provided by the CLRA "are not exclusive." *See e.g.*, Civil Code Section 1752.

Without conceding whether BMW's "offer" is proper, it is unclear whether BMW intends to take a mileage offset (not included in the CLRA remedies) and if so, what mileage offset BMW intends to use for the calculation.  Further, the letter does not indicate whether Plaintiff will be required to give up her other claims, including civil penalties under the Song-Beverly Act, and injunctive relief under CLRA.  Additionally, it is unclear whether the "offer" is contingent on Plaintiff dismissing the case in its entirety.

As such, please confirm whether BMW is willing to offer Plaintiff full restitution pursuant to the CLRA (which is currently not clear) and will allow Plaintiff to continue litigating the other causes of action alleged in the complaint, including the civil penalties under the Song Beverly Act, so that we can arrange for the prompt return of the vehicle.

Thank you.

Benjeman R. Beck
**Strategic Legal Practices**
**A Professional Corporation**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel:  (310) 929-4900
Fax: (310) 943-3838
bbeck@slpattorney.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original and any copies of this message and any attachments attached to it.

**From:** Lindsay Carlson [mailto:Lindsay.Carlson@bowmanandbrooke.com]
**Sent:** Monday, July 24, 2017 5:09 PM
**To:** Benjeman Beck <bbeck@slpattorney.com>
**Cc:** Jared Walder <jwalder@slpattorney.com>; Autumn Lewis <Autumn.Lewis@bowmanandbrooke.com>; Brian Takahashi <Brian.Takahashi@bowmanandbrooke.com>; Richard Stuhlberg <Richard.Stuhlbarg@bowmanandbrooke.com>
**Subject:** RE: Eisenacher v. BMW

Benjeman,

As my out-of-office response indicated, I was not available today.  I am available tomorrow to discuss.  Note, however, that BMW NA offered to provide restitution under the CLRA in a letter dated March 10, 2017 (attached).  We never received a response from plaintiffs.

Lindsay

**Lindsay G. Carlson**
Bowman and Brooke LLP
Direct: 1.310.380.6571

---

**From:** Benjeman Beck [mailto:bbeck@slpattorney.com]
**Sent:** Monday, July 24, 2017 1:01 PM
**To:** Lindsay Carlson
**Cc:** Jared Walder
**Subject:** Eisenacher v. BMW

Lindsay:

I just left you a voicemail message, please give me a call back.  Pursuant to Local Rule 7-3, we intend to file a motion for leave to amend the complaint to add violation of the Consumer Legal Remedies Act.  Please advise when today you are you available by phone to discuss reaching a stipulation for leave to amend on these grounds.  Thank you.

Benjeman R. Beck
**Strategic Legal Practices**
**A Professional Corporation**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Tel:  (310) 929-4900
Fax: (310) 943-3838
bbeck@slpattorney.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original and any copies of this message and any attachments attached to it.

---

Note: This electronic mail is intended to be received and read only by certain individuals. It may contain information that is attorney-client privileged or protected from disclosure by law. If it has been misdirected, or if you suspect you have received this in error, please notify me by replying and then delete both the message and reply. Thank you.