O

# United States District Court
# Central District of California

| | |
|---|---|
| KARI EISENACHER and DAVID EISENACHER, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, et al.,<br><br>Defendants. | Case No. 2:17-cv-00984-ODW (JCx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW;**<br><br>**ORDER DENYING DEFENDANT'S MOTION IN LIMINE NO. 1 [85]** |

## I. INTRODUCTION

On April 30, 2019, through May 2, 2019, the Court held a three-day bench trial in this action. (ECF Nos. 113, 116, 117.) Plaintiffs Kari and David Eisenacher tried two claims against Defendant BMW of North America ("BMW NA") under the Song-Beverly Consumer Warranty Act ("Song-Beverly"), specifically (1) violation of California Civil Code section 1793.2(d)(2) and (2) violation of California Civil Code section 1793.2(b).

The parties submitted documentary evidence and elicited testimony from: Arcenio Campos, BMW NA Customer Care Engineer; Dan Calef, Plaintiffs' Expert witness; Kari Eisenacher, Plaintiff; and Jose Grijalva, BMW NA Customer Support Engineer and Expert witness.

Having carefully reviewed and considered the evidence and arguments of counsel as presented at trial and in their written submissions, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such, and vice versa.

## II. FINDINGS OF FACT

1. On or about November 11, 2012, Plaintiffs Kari Eisenacher and David Eisenacher purchased a used motor vehicle ("Vehicle"), a 2012 BMW 550i with VIN Number WBAFR9C50CDV58985, distributed by Defendant BMW NA.

2. At the time of entering into the purchase contract, Defendant BMW NA was in the business of distributing motor vehicles.

3. Plaintiffs purchased the Vehicle with 2813 miles on the odometer.

4. The Vehicle was still under the new vehicle limited warranty, which was 48 months or 50,000 miles, whichever came first, from the in-service date of March 10, 2012.

5. The new motor vehicle warranty expired by time on March 10, 2016, four years from the day the Vehicle was purchased and delivered to the first owner.

6. PAG Santa Ana B1 d/b/a Crevier BMW ("Crevier BMW") is an authorized dealership and repair facility of Defendant BMW NA.

7. BMW of Riverside ("Riverside BMW") is an authorized dealership and repair facility of Defendant BMW NA.

8. Plaintiffs brought the Vehicle to a BMW authorized repair facility on four occasions during the warranty period as relevant to the issues raised at trial: December 23, 2014 (20,419 miles); March 4, 2015 (22,598 miles); May 19, 2015 (24,256 miles); and December 1, 2015 (28,594 miles).

**A.  December 23, 2014, Crevier BMW**

9. Plaintiffs delivered the Vehicle to Crevier BMW on December 23, 2014, with 20,419 miles on the odometer.

10. The service order reflects that Plaintiffs reported a "shimmy" in the steering wheel when slowing from higher speeds.

11. Crevier BMW inspected the Vehicle and found a deviation in thickness of the left front rotor, worn tires and bent rims, and a front-brake "vibration."

12. Front rotor thickness variations, front-brake vibration, worn tires, or damaged wheels can manifest as vibration, shimmy, or perceived oscillation in the steering wheel.

13. Plaintiff Kari Eisenacher testified that the front rims may have been damaged as a result of hitting a pothole.

14. Crevier BMW replaced the front discs and pads.

15. Crevier BMW returned the Vehicle to Plaintiffs on December 24, 2014.

16. The steering shimmy did not manifest again after this repair.

**B.     March 4, 2015, Crevier BMW**

17. Plaintiffs delivered the Vehicle to Crevier BMW on March 4, 2015, with 22,598 miles on the odometer.

18. The service order reflects that Plaintiffs reported: white smoke out of the exhaust and a burning smell; a potential oil leak; and a grinding noise from the steering column.

19. Responding to the report of white smoke:
    a. Crevier BMW inspected the Vehicle and found the fuel injectors had failed and damaged certain spark plugs.
    b. Crevier BMW replaced all 8 fuel injectors and 2 spark plugs.
    c. Crevier BMW test drove the Vehicle and found no further problems related to white smoke.

20. Responding to the report of a potential oil leak:
    a. Crevier BMW inspected the Vehicle and found no oil leaks.

    b.    "Engine[s] that are fitted with a turbocharger, as part of their normal operation, will consume engine oil at higher rate than a naturally aspirated engine."

    c.    A technician inspected the turbocharger inlet and described "oil leakage into valley of engine as well as burned oil signs on fins of Turbos."

    d.    It is not abnormal to find some oil seepage at the turbocharger inlet.

    e.    BMW Technical Service Bulletin ("SIB") 11 03 13 includes photographs identifying acceptable and unacceptable engine oil leakage from a turbocharger.

    f.    The technician submitted photographs of the Vehicle's turbocharger inlet to a "TC case" for PUMA engineer review.[1]

    g.    The PUMA engineer reviewed the submission and found no significant oil leakage. He did not recommend replacing the turbocharger.

21.    Responding to the report of a grinding noise from the steering, a Crevier BMW technician test drove the Vehicle and found no abnormal steering noises.

22.    Crevier BMW initiated an N63 Customer Care Package ("CCP").

    a.    The N63 CCP is a BMW program designed for N63 engines (like the engine in the Vehicle) to ensure they "keep delivering the ultimate performance."

    b.    The CCP is not a mandatory campaign or safety recall.

    c.    Authorized repair facilities are directed to complete the CCP only "based on parts availability, workshop capacity, and the customer's schedule."

---

[1] A "TC case" is a case concerning components that require authorization from a PUMA engineer before replacement. A PUMA engineer is a higher-level engineer with extensive technical background and experience.

4

      d.      The N63 CCP program includes a 6-point check, and, if necessary, replacement of certain powertrain components.

      e.      Crevier BMW replaced the N63 CCP components that it had in-stock and special-ordered the others.

      f.      The Vehicle components identified for replacement per the CCP were not defective or nonconforming.

23.    Crevier BMW also replaced the 12-volt main battery, pursuant to SIB 61 30 14, which recommends the replacement in conjunction with the N63 CCP "as a preventative maintenance measure."

24.    The 12-volt main battery was not defective or nonconforming.

25.    Crevier BMW returned the Vehicle to Plaintiffs on March 6, 2015.

**C.    May 19, 2015, Crevier BMW**

26.    Plaintiffs delivered the Vehicle to Crevier BMW on May 19, 2015, with 24,256 miles on the odometer.

27.    The service order reflects that Plaintiffs reported a clicking noise coming from the steering wheel.

      a.      Crevier BMW inspected the Vehicle and identified the clicking noise as coming from the rack and steering shaft.

      b.      Crevier BMW removed and replaced the steering rack.

      c.      After alignment, adjustment, and reprogramming, a technician test drove the Vehicle and found the noise no longer present.

      e.      The steering noise issue did not manifest again after this repair.

28.    The special-order CCP components were in-stock on this visit.

      a.      Crevier BMW performed the remaining CCP-component replacement.

      b.      Crevier BMW did not replace the fuel feed line, one of the listed CCP components.

29.    Crevier BMW returned the Vehicle to Plaintiffs by May 22, 2015.

### D. December 1, 2015, Riverside BMW

30. Plaintiffs delivered the Vehicle to Riverside BMW on December 1, 2015, with 28,594 miles on the odometer.

31. The service order reflects that Plaintiffs reported the low oil light on, she was topping off the fluid, and she had seen steam "coming from the engine when opening the oil cap to top off."

32. The Riverside BMW technician visually inspected for oil leaks and found none.

33. The technician's hand-written notes state steam is "[n]ormal due to engine operating temperature."

34. The technician found no faults related to Plaintiff's report.

35. Riverside BMW also replaced the 12-volt main battery, pursuant to SIB 61 30 14, the same SIB that Crevier BMW referenced when it replaced the same battery earlier that year.

36. The battery was not defective or nonconforming and Plaintiffs had made no complaint about the battery.

37. Riverside BMW returned the Vehicle to Plaintiffs on December 3, 2015.

### E. Post-Warranty Service Visits

38. Plaintiffs delivered the Vehicle to Crevier BMW on August 16, 2016, at 33,322 miles, and September 26, 2016, at 34,462 miles.

39. These service visits occurred after the warranty period ended.

40. The issue reported at these visits did not arise and was unrelated to issues occurring during the warranty period.

41. Accordingly, the Court granted Defendant's motion to exclude evidence regarding these post-warranty service visits and does not consider these post-warranty repairs.

### F. Expert Inspections of the Vehicle

42. Plaintiffs' Expert, Dan Calef, inspected the Vehicle in July 2018.

43. Defendant's Expert, Jose Grijalva, inspected the Vehicle on September 6, 2018. At the time of the inspection, the Vehicle had approximately 50,768 miles.

44. Mr. Calef attended Mr. Grijalva's September 2018 inspection.

45. During the September inspection:
   a. Neither expert noted any white smoke.
   b. Neither expert heard clicking or grinding from the steering system during the 50-minute, approximately 30-mile test drive.
   c. Mr. Grijalva found both front wheels were bent from outside influences.
   d. Mr. Grijalva took photographs of the turbochargers, similar to Crevier BMW's March 2015 photographs.
   e. The Vehicle had been driven approximately 28,170 miles since the March 2015 turbocharger photographs.
   f. Mr. Grijalva's September 2018 photographs showed the turbochargers in a condition very similar to the March 2015 photographs, demonstrating no worsening oil leakage at the turbocharger inlet.

### III. CONCLUSIONS OF LAW

In this bench trial, Plaintiffs tried two claims: (1) violation of California Civil Code section 1793.2(d)(2) and (2) violation of California Civil Code section 1793.2(b). Plaintiffs contend Defendant BMW NA was unable to repair the Vehicle to conform to the applicable warranties after a reasonable number of attempts, and thus violated California Civil Code section 1793.2(d)(2) when it failed to repurchase or replace Plaintiffs' 2012 550i. As nonconformities, Plaintiffs raised the white smoke, steering, and oil leakage issues. Plaintiffs explicitly excluded oil consumption as a potential nonconformity in this case. Additionally, Plaintiffs contend that Defendant BMW NA was required to complete the CCP within 30 days, and thus violated California Civil Code section 1793.2(b) when it failed to do so.

**A. Failure to Repurchase or Replace, Cal. Civ. Code § 1793.2(d)(2).**

46. "If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer." Cal. Civ. Code § 1793.2(d)(2).

47. To recover under the Song-Beverly Consumer Warranty Act, a plaintiff must prove "(1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element)." *Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 152 (2013), *as modified on denial of reh'g* (July 8, 2013); *see* Cal. Civ. Code § 1793.2(d)(2).

48. "[T]he reasonableness of the number of [repair] attempts is a question of fact" to be determined in light of the circumstances, but at a minimum there must be more than one opportunity to fix the nonconformity. *Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1208–09 (2003). "Each occasion that an opportunity for repairs is provided counts as an attempt, even if no repairs are actually undertaken." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 799 (2006) (citing *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1103 (2001)).

49. Plaintiffs are not entitled to repurchase or replacement under the Song-Beverly Consumer Warranty Act because the Vehicle does not have unrepaired nonconformities covered by the limited written warranty; to the extent there was ever a nonconformity covered by the limited written warranty, it was repaired within a reasonable number of repair attempts; and none of the alleged nonconformities substantially impaired the use, value, or safety of the Vehicle.

50. Specifically, Plaintiffs are not entitled to repurchase or replacement with respect to the "white smoke" because Crevier BMW conformed the Vehicle in one service visit.

51. Plaintiffs are not entitled to repurchase or replacement with respect to the "steering shimmy" because Crevier BMW conformed the Vehicle in one service visit.

52. Further, the "steering shimmy" is not a "nonconformity," as it was caused by bent rims or damaged rotors resulting from outside influence.

53. Plaintiffs are not entitled to repurchase or replacement with respect to "steering noise" because Crevier BMW conformed the Vehicle in two service visits.

54. Plaintiffs are not entitled to repurchase or replacement with respect to oil leakage, because no nonconforming oil leakage was ever identified; the oil identified in the turbocharger was within normal limits.

55. Even considering the service and repair history in the aggregate, Plaintiffs are not entitled to repurchase or replacement because Crevier BMW conformed the Vehicle in a reasonable number of repair attempts and the aggregate nonconformities did not substantially impair the use, value, or safety of the Vehicle.

**B.     Failure to Complete Repairs within 30 Days, Cal. Civ. Code § 1793.2(b).**

56. Where "service or repair of the goods is necessary because they do not conform with the applicable express warranties . . . the goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days." Cal. Civ. Code § 1793.2(b).

57. The CCP program is not a mandatory program or a safety recall.

58. Service or repair of the Vehicle pursuant to the CCP was not necessary to conform the Vehicle to the applicable warranties.

59. Defendant BMW NA did not violate section 1793.2(b) by replacing CCP components more than 30 days after special-ordering them.

///

///

9

## IV. DEFENDANT'S MOTION IN LIMINE NO. 1

On April 15, 2019, the Court heard oral argument and reserved ruling on Defendant BMW NA's Motion in Limine to Exclude the Expert Testimony of Dan Calef. (MIL No. 1, ECF No. 85.) Having considered counsel's arguments and Mr. Calef's qualifications and testimony, the Court **DENIES** Defendant's Motion.

## V. CONCLUSION

In light of the Court's findings of fact and conclusions of law, the Court **ORDERS** the parties to confer and submit a Proposed Judgment no later than May 20, 2019

**IT IS SO ORDERED.**

May 13, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**